

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

**NO. 2-09-030-CV**

MARKEL INSURANCE COMPANY                                      APPELLANT

V.

JILL MUZYKA, INDIVIDUALLY AND                                 APPELLEE
AS NEXT FRIEND AND PARENT OF
KENNEDY MUZYKA, A MINOR

------------

FROM THE 348TH DISTRICT COURT OF TARRANT COUNTY

------------

## OPINION

------------

### I. INTRODUCTION

The sole legal issue presented in this appeal is whether the trial court correctly determined that the medical expense claim of Appellee Jill Muzyka, individually and as next friend and parent of Kennedy Muzyka, a minor, was covered under an insurance policy issued by Appellant Markel Insurance

Company to the ASI Gymnastic Center. For the reasons set forth below, we will affirm the trial court's judgment.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Our recitation of the pertinent facts in this case is taken from an agreed statement of facts signed by the parties.[1] On April 9, 2005, Kennedy attended a children's birthday party at the ASI Gymnastic Center. During the party, Kennedy participated in a game called "the helicopter." "The helicopter" is a game in which an ASI employee swings a large rope in a circle along the ground as children standing in a circle attempt to jump over the rope. During the game, an ASI employee swung the rope too high, causing the rope to hit Kennedy as she jumped. The force of the rope's impact knocked Kennedy to the floor and caused her to break her left arm. Kennedy required emergency and first aid medical care, x-rays, surgery, nursing and professional medical services, as well as additional follow-up medical attention. Jill incurred the medical expenses for Kennedy's injury.

At the time of Kennedy's injury, ASI held a commercial general liability policy issued by Markel. The policy contained a section entitled "Coverage C Medical Payments," which stated in pertinent part that Markel would pay

---

[1] *See* Tex. R. Civ. P. 263 (providing for submission of agreed statements of facts) (hereinafter "Rule 263").

medical expenses for bodily injury caused by an accident that occurred either on ASI's premises or because of ASI's operations. The policy also contained an exclusion providing that the medical payment provision under "Coverage C Medical Payments" did not apply to bodily injury incurred by "Participants, Students, and Members while participating in Athletic, Sporting or Exercise Activities."

Jill filed a claim with Markel for repayment of Kennedy's medical expenses under ASI's insurance policy. Markel declined to pay and asserted that "the helicopter" game was a "Sporting or Exercise Activit[y]" excluded from coverage under the policy.[2] Jill subsequently sued Markel, seeking recovery for medical expense payments, attorney's fees, and statutory violations. The parties agreed to try separately the issue of whether the policy exclusion applied to Jill's claim for Kennedy's medical expenses. The parties also agreed that the issue was a question of law and therefore submitted it to the trial court for judicial determination by means of an agreed statement of facts. *See* Tex. R. Civ. P. 263.

The parties' agreed statement of facts provides that Kennedy's injury occurred while she was on premises owned by ASI and covered by the

---

[2] Markel does not contend that "the helicopter" game constituted "Athletic . . . Activit[y]" under the policy exclusion.

3

insurance policy issued by Markel, during the insurance policy period, and in connection with ASI's operations. The parties further agreed that the insurance policy did not contain a definition of "Athletic, Sporting or Exercise Activities." The parties agreed that the purpose of the birthday party was to celebrate a young girl's birthday by playing games for fun, that "the helicopter" game is used by ASI during parties for fun and to entertain children, and that the game was not used during the birthday party to promote physical training, strength building, or physical endurance. Furthermore, the parties agreed that Kennedy's purpose in playing "the helicopter" game was "solely for fun and amusement, not for the purpose of athletics, sports, or exercise" and that "Markel does not contend that Kennedy was playing the game for the purpose of getting in better physical condition or to become more physically fit."

The trial court heard the arguments of counsel based on the agreed statement of facts. The trial court then ruled in favor of Jill, concluding that her medical expense claim deriving from Kennedy's injury did not fall within the

exclusion and was therefore covered by the insurance policy.[3] The trial court's judgment included findings of fact and conclusions of law.

### III. STANDARD OF REVIEW

In an appeal involving an agreed statement of facts pursuant to Rule 263, we review de novo the issue of whether the trial court properly applied the law to the agreed facts.  *See* Tex. R. Civ. P. 263; *Panther Creek Ventures, Ltd. v. Collin Cent. Appraisal Dist.*, 234 S.W.3d 809, 811 (Tex. App.—Dallas 2007, pet. denied); *Alma Group L.L.C. v. Palmer*, 143 S.W.3d 840, 843 (Tex. App.—Corpus Christi 2004, pet. denied); *State Farm Lloyds v. Kessler*, 932 S.W.2d 732, 735 (Tex. App.—Fort Worth 1996, writ denied).  The agreed facts are binding on the parties, the trial court, and the reviewing court.  *Panther*, 234 S.W.3d at 811.  We conclusively presume that the parties have brought before the court all facts necessary for the presentation and adjudication of the case.  *Cummins & Walker Oil Co. v. Smith*, 814 S.W.2d 884, 886 (Tex. App.—San Antonio 1991, no writ).

---

[3] In addition to the medical expense claim, Jill asserted claims against Markel for breach of contract and violations of chapter 542 of the Texas Insurance Code.  Following the trial court's judgment on the agreed statement of facts, the trial court severed the issue of whether the policy exclusion applied to Jill's medical expense claim from the breach of contract and statutory violation claims, rendering the judgment on that issue final and appealable.

5

## IV. THE TRIAL COURT'S FINDINGS OF FACT AND LEGAL REASONING

In its second issue, Markel argues that the trial court erred by making findings of fact in a case submitted pursuant to Rule 263 on an agreed statement of facts. In its third issue, Markel contends that the trial court's judgment, which contains findings of fact and conclusions of law, reflects that the trial court applied the wrong legal standard to the issue of whether Kennedy's medical expenses were excluded from coverage under Markel's policy.

Concerning Markel's second issue, we note that Markel filed with the trial court a request for findings of fact and conclusions of law. Nonetheless, in cases submitted to the trial court on an agreed statement of facts, no factual issue is "tried" within the scope of Texas Rule of Civil Procedure 296, which authorizes findings of fact and conclusions of law. *See* Tex. Rule Civ. P. 296; *see, e.g., Linwood v. NCNB Tex.*, 885 S.W.2d 102, 103 (Tex. 1994); *Port Arthur Indep. Sch. Dist. v. Port Arthur Teachers Ass'n*, 990 S.W.2d 955, 957–58 (Tex. App.—Beaumont 1999, pet. denied). Consequently, in a case submitted on an agreed statement of facts pursuant to Rule 263, we disregard any findings of fact made by the trial court. *See* Tex. R. Civ. P. 263; *Davis v. State*, 904 S.W.2d 946, 950 (Tex. App.—Austin 1995, no writ) (holding that findings of fact and conclusions of law filed in agreed cases will be disregarded

6

on appeal); *Clean Serve, Inc. v. Kroger Co.*, No. 01-95-01372-CV, 1996 WL 475806, at \*3 (Tex. App.—Houston [1st Dist.] Aug. 22, 1996, writ denied) (not designated for publication) (stating that court cannot draw any inference or find any facts not contained in the agreement unless, as a matter of law, the additional inference or fact is necessarily compelled by the agreed facts); *see also Palmer*, 143 S.W.3d at 843 (stating that appellate courts review only whether the trial court properly applied the law to the stipulated facts). Because we disregard any findings of fact made by the trial court, the trial court's act of making findings of fact cannot be a ground for reversal on appeal. We overrule Markel's second issue.

Concerning Markel's third issue, Markel acknowledges in its brief that we apply a de novo standard of review to the issue of whether Jill's claim for Kennedy's medical expenses is excluded under Markel's policy. Because we review this legal issue de novo, the trial court's reasoning is not relevant to or controlling of our own de novo review and analysis. *See Port Arthur ISD*, 990 S.W.2d at 957–58 (recognizing that "[t]here is no place for . . . conclusions of law in cases submitted pursuant to Rule 263"). Thus, regardless of the reasoning employed by the trial court (which we do not consider in conducting our own de novo review), if the trial court reached the correct result, we will affirm its ruling. *See Gulf Land Co. v. Atlantic Ref. Co.*, 134 Tex. 59, 131

S.W.2d 73, 84 (1939) (recognizing the well-settled principle that an appellate court will sustain the judgment of a trial court if it is correct regardless of whether the trial court gives the correct legal reason for the judgment entered, or whether the trial court gives any reason at all); *see also BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002) (recognizing principle that trial court judgment will not be reversed if trial court makes erroneous conclusion of law giving wrong reason for an otherwise correct result). Consequently, we overrule Markel's third issue.

## V. INJURY COVERED UNDER POLICY

In its first issue, Markel argues that the trial court misapplied the law to the present facts because the plain language of its policy dictates that Kennedy's injury sustained during "the helicopter" game constitutes an injury incurred while participating in a "Sporting or Exercise Activit[y]" and consequently falls within the policy's exclusion. As set forth above, we review this legal issue de novo, analyzing the application of the law to the agreed statement of facts. *See* Tex. R. Civ. P. 263; *Panther*, 234 S.W.3d at 811; *Palmer*, 143 S.W.3d at 843; *Kessler*, 932 S.W.2d at 735.

### A. Rules of Construction

We construe insurance policies according to the same rules of construction that apply to contracts generally. *Nat'l Union Fire Ins. Co. of*

8

*Pittsburgh, PA v. Crocker*, 246 S.W.3d 603, 606 (Tex. 2008); *State Farm Life Ins. Co. v. Beaston*, 907 S.W.2d 430, 433 (Tex. 1995). Enforcing the parties' expressed intent is our primary concern. *See Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132, 133 (Tex. 1994). Terms in an insurance contract will be given their ordinary meaning unless the policy shows that the words were meant in a technical or different sense. *Gonzalez v. Mission Am. Ins. Co.*, 795 S.W.2d 734, 736 (Tex. 1990); *Sec. Mut. Cas. Co. v. Johnson*, 584 S.W.2d 703, 704 (Tex. 1979). We must read all parts of the contract together and must strive to give meaning to every sentence, clause, and word to avoid rendering any portion inoperative. *Balandran v. Safeco Ins. Co. of Am.*, 972 S.W.2d 738, 741 (Tex. 1998). "No one phrase, sentence, or section [of the policy] should be isolated from its setting and considered apart from the other provisions." *Forbau*, 876 S.W.2d at 134. If terms in the contract can be given a definite or certain legal meaning, they are not ambiguous, and the court will construe the contract as a matter of law. *Fiess v. State Farm Lloyds*, 202 S.W.3d 744, 746 (Tex. 2006). However, if, after applying the rules of construction identified above, an insurance policy remains ambiguous, we are to construe the language in a manner that favors coverage. *Beaston*, 907 S.W.2d at 433.

Not every difference in the interpretation of a contract creates an ambiguity. *See Forbau*, 876 S.W.2d at 134. The mere disagreement over the

9

meaning of a particular provision in a contract does not make it ambiguous. *Kelley-Coppedge, Inc. v. Highlands Ins. Co.*, 980 S.W.2d 462, 465 (Tex. 1998); *GTE Mobilnet of S. Tex. Ltd. P'ship v. Telecell Cellular, Inc.*, 955 S.W.2d 286, 289 n.1 (Tex. App.—Houston [1st Dist.] 1997, writ denied). In order for an ambiguity to exist when the parties advance conflicting interpretations, both interpretations must be reasonable. *See Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd.*, 940 S.W.2d 587, 589 (Tex. 1996).

### B. The Exclusion is Not Ambiguous; "The Helicopter" Game is not a Sporting or Exercise Activity under the Policy

The policy exclusion clearly states that the section in the insurance policy entitled "Coverage C Medical Payments" *does not apply* to "Participants, Students, and Members while participating in Athletic, Sporting, or Exercise Activities." Neither party argues that a person could read the language of the exclusion as *applying* "Coverage C Medical Payments" to individuals participating in such activities. *See generally Fiess*, 202 S.W.3d at 747 (stating that clause "we do not cover loss caused by mold" in insurance policy is not ambiguous because few ordinary people would read it to say "we do too cover loss caused by mold").

Reading the policy in its entirety, it is clear that the exclusion is intended to exclude coverage for injuries incurred during a certain class of physical

10

activities that would otherwise be covered under the terms of the policy, that is, athletic, sporting, or exercise activities. *See Forbau*, 876 S.W.2d at 134. Through the agreed statement of facts, Markel conceded that "the helicopter" game was not an athletic activity, and both parties agree that the terms "Sporting or Exercise Activities" should be given their plain and ordinary meaning in determining whether "the helicopter" game is a "Sporting or Exercise Activit[y]"; the parties simply disagree about the plain and ordinary meaning of these words. The mere disagreement by the parties as to the plain and ordinary meaning of "Sporting or Exercise Activities" does not make the exclusion ambiguous. *See Kelley-Coppedge, Inc.*, 980 S.W.2d at 465; *GTE Mobilnet*, 955 S.W.2d at 289 n.1. Only when, after applying the applicable rules of construction, a contract term is susceptible of two or more reasonable interpretations will the term be ambiguous. *Glover v. Nat'l Ins. Underwriters*, 545 S.W.2d 755, 761 (Tex. 1977). We hold that the language of the exclusion is not ambiguous; we look to the plain language of the exclusion to determine whether Jill's claim for Kennedy's medical expenses is covered under Markel's policy.

In determining the ordinary and generally accepted meaning of an undefined term in an unambiguous insurance policy provision, Texas courts may consult dictionaries. *See Mescalero Energy, Inc. v. Underwriters Indem. Gen.*

11

*Agency, Inc.*, 56 S.W.3d 313, 320 (Tex. App.—Houston [1st Dist.] 2001, pet. denied) (stating that Texas courts often look to dictionaries to determine ordinary and generally accepted meanings of contract terms); *see also Fiess*, 202 S.W.3d at 751 & n.30 (consulting *Webster's New Collegiate Dictionary* for meaning of "otherwise" in an insurance policy). Consulting dictionaries to determine the plain and ordinary meaning of "Exercise or Sporting Activities," one dictionary defines "exercise" as "bodily or mental exertion, especially for the sake of training or improvement of health." Dictionary.com, Exercise, http://dictionary.reference.com/browse/exercise (last visited July 24, 2009). Another dictionary definition of "exercise"—the one posited by Markel—is an "activity requiring physical or mental exertion, especially when performed to maintain or develop fitness."

As generally understood and reasonably construed, the definition of "exercise" includes an intent requirement—to maintain and develop physical fitness, or to train or to improve health. The parties' agreed statement of facts, however, indicates that "the helicopter" game was a birthday party activity intended for fun and not used to promote physical training, strength building, or physical endurance.

Markel nonetheless argues on appeal, utilizing its proposed dictionary definition of "exercise" as an "activity requiring physical or mental exertion,

12

especially when performed to maintain or develop fitness," that "especially" does not mean "only" and that "exercise" is any activity that "merely requires physical or mental exertion." Markel claims that jumping over a rope during a game is an activity requiring physical exertion and therefore constitutes exercise. However, this interpretation of exercise is unreasonable and renders the entire policy meaningless because virtually all activities require some level of physical or mental exertion. *See Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983) (noting that insurance policy must be construed to give effect to all terms so that none are rendered meaningless). Markel suggests that the policy may have covered Kennedy's injury had it been incurred by Kennedy's slipping on water on the floor while walking to the bathroom. But under the broad definition of "exercise" urged by Markel, an injury incurred by merely walking to the bathroom—an activity which clearly constitutes some physical exertion—would be excluded from coverage as an exercise activity. We will not construe contracts to produce an absurd result when a reasonable alternative construction exists. *S. County Mut. Ins. v. Surety Bank, N.A.*, 270 S.W.3d 684, 689 (Tex. App.—Fort Worth 2008, no pet.).

We hold that "the helicopter" game played at the birthday party was not an "Exercise Activit[y]" under the plain language of the exclusion.

13

Markel next argues that "the helicopter" game is a sporting activity. "Sport" is defined as "athletic activity requiring skill or physical prowess and often of a competitive nature, [such] as racing, baseball, tennis, golf, bowling, wrestling, boxing, hunting, fishing, etc." Dictionary.com, Sport, http://dictionary.reference.com/browse/sport (last visited July 24, 2009). The definition of "sport" refers to an "athletic activity," and the parties' agreed statement of facts acknowledges that "the helicopter" game is not an "athletic activity." Furthermore, the parties' agreed statement of facts indicates that "the helicopter" game is designed as an activity for children to participate in while at a birthday party and does not require any particular skill or physical prowess. The parties' agreed statement of facts does not suggest that "the helicopter" game was of a competitive nature. To the contrary, the agreed statement of facts clearly states that the game was intended solely for fun and entertainment. Consequently, we hold that "the helicopter" game is not a sporting activity under the plain language of the exclusion.

Because we have held that "the helicopter" game is not a "Sporting or Exercise Activit[y]" under the plain language of the exclusion, we hold that the trial court did not err by rendering judgment against Markel that Jill's medical expense claim is covered under the insurance policy. We overrule Markel's first issue.

14

## VI. Conclusion

Having overruled Markel's three issues, we affirm the trial court's judgment.

SUE WALKER
JUSTICE

PANEL: CAYCE, C.J.; LIVINGSTON and WALKER, JJ.

DELIVERED: August 6, 2009