# NO. 12-18-00198-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *CHERIE FRANKLIN, INDIVIDUALLY AND AS REPRESENTATIVE OF THE ESTATE OF EULA MAE FRANKLIN, APPELLANT* | § | *APPEAL FROM THE* |
| *V.* | § | *COUNTY COURT AT LAW NO. 2* |
| *LONGVIEW MEDICAL CENTER, L.P., D/B/A LONGVIEW REGIONAL MEDICAL CENTER, APPELLEE* | § | *GREGG COUNTY, TEXAS* |

### *MEMORANDUM OPINION*

Cherie Franklin, individually and as representative of the Estate of Eula Mae Franklin, Deceased (Franklin), appeals the trial court's summary judgment rendered in favor of Appellee Longview Medical Center, L.P. d/b/a Longview Regional Medical Center (the Hospital). Franklin raises three issues on appeal. We affirm.

### BACKGROUND

This matter arose following the death of Eula Mae Franklin, who at the time of her death, was a patient at the Longview Regional Medical Center. Franklin filed suit on June 19, 2017, alleging negligence, medical malpractice, and wrongful death. Franklin requested issuance of citation that same day. She further arranged for a process server to serve the Hospital. The two-year statute of limitations for these causes of action ran on June 20, 2017.[1]

From approximately June 26, 2017, until August 24, 2017, Karla Gaytan, a legal assistant for Franklin's attorney, made nine phone calls to the process server. The longest interval between

---

[1] *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.251(a) (West 2017) (setting forth a limitations period of two-years for health care liability claims).

these nine calls was twelve days. During this time, when Gaytan was able to speak to the process server, he told her he still was "in the process" of trying to serve the defendants. During another of these conversations, he told Gaytan the defendants would be served in "a few days." By their August 9, 2017, conversation, the process server told Gaytan he was "having problems" serving the defendants. Thereafter, Gayton called and left voicemails for the process server on August 14, 17, and 24, 2017.

Franklin's attorney's office was closed during Hurricane Harvey. But Gayton resumed her attempts to contact the process server on September 5, 2017.

After four phone calls, Gayton reached the process server on September 21, 2017, and he told her that the citations had been served and he was in the process of filing the affidavit of service. Gayton monitored the Gregg County Clerk's website to determine when the affidavit of service was filed. When that did not occur, she attempted to contact the process server an additional five times, beginning on October 3, 2017, until she discovered that his phone had been disconnected when she attempted to contact him on November 7, 2017.

On November 14, 2017, Gayton called the Gregg County Clerk's office and was informed that she would have to request new citations, which she did on November 15, 2017. A new process server sent process to the defendants by certified mail on November 17, 2017, and service was accomplished on November 21, 2017.

The Hospital answered and, later, moved for summary judgment, arguing that Franklin's suit was barred by limitations because Franklin did not exercise due diligence in effecting service. Franklin responded and, in reliance on Gayton's affidavit testimony and the Texas Supreme Court's emergency order following Hurricane Harvey, argued that she exercised due diligence in serving the Hospital. Ultimately, the trial court rendered summary judgment in the Hospital's favor, and this appeal followed.

## SUMMARY JUDGMENT

In her second and third issues, Franklin argues that the trial court erred in granting the Hospital's motion for summary judgment because (1) the Hospital failed to demonstrate why Franklin's explanation for the delay in service was insufficient and (2) the trial court erroneously considered the Texas Supreme Court's Hurricane Harvey emergency order's effect as tolling the limitations period rather than considering it as an explanation for the delay of service.

2

**Standard of Review**

Because summary judgment is a question of law, a trial court's summary judgment decision is reviewed de novo.[2] *See Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005); *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003); *McMahon Contracting, L.P. v. City of Carrollton*, 277 S.W.3d 458, 467–68 (Tex. App.–Dallas 2009, pet. denied). The standard of review for a traditional summary judgment motion pursuant to Texas Rule of Civil Procedure 166a(c) is threefold: (1) the movant must show there is no genuine issue of material fact and he is entitled to judgment as a matter of law; (2) in deciding whether there is a disputed, material fact issue precluding summary judgment, the court must take as true evidence favorable to the nonmovant; and (3) the court must indulge every reasonable inference from the evidence in favor of the nonmovant and resolve any doubts in the nonmovant's favor. *See* TEX. R. CIV. P. 166a(c); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548–49 (Tex. 1985); *Montgomery v. Kennedy*, 669 S.W.2d 309, 311 (Tex.1984); *Hightower v. Baylor Univ. Med. Ctr.*, 251 S.W.3d 218, 221–22 (Tex. App.–Dallas 2008, pet. struck).

A defendant moving for summary judgment must either (1) disprove at least one essential element of the plaintiff's causes of action as a matter of law or (2) plead and conclusively establish each essential element of an affirmative defense. *See Doe v. Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d 472, 476–77 (Tex. 1995); *Hightower*, 251 S.W.3d at 222. Once the defendant establishes its right to summary judgment as a matter of law, the burden shifts to the plaintiff to present evidence raising a genuine issue of material fact, thereby precluding summary judgment. *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex. 1979); *Talford v. Columbia Med. Ctr. at Lancaster Subsidiary, L.P.*, 198 S.W.3d 462, 464 (Tex. App.–Dallas 2006, no pet.). The burden shifts "only if the movant's evidence meets the criteria of Texas Rule of Civil Procedure 166a(c) and negates all genuine issues of material fact with respect to an essential element of the nonmovant's cause of action." *Coats v. Farmers Ins. Exch.*, 230 S.W.3d 215, 220 (Tex. App.–Houston [14th Dist.] 2006, no pet.).

**Running of Limitations**

The two-year limitations period for Franklin's health care liability causes of action expired on June 20, 2017. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.251(a). However, the trial court

---

[2] In conducting a de novo review, the trial court's reasoning is not relevant to or controlling of our review and analysis. *See Markel Ins. Co. v. Muzyka*, 293 S.W.3d 380, 385 (Tex. App.–Fort Worth 2009, no pet.).

found that the limitations period was tolled by virtue of Franklin's written notice of claim and the Texas Supreme Court's emergency order relating to Hurricane Harvey. *See id.* § 74.051 (West 2017); Emergency Order Authorizing Modification and Suspension of Court Procedures in Proceedings Affected by Disaster, Misc. Docket No. 17-9091 (Tex. Aug. 28, 2017), *available at* http://www.txcourts.gov/media/1438759/179091.pdf (Emergency Order 9091). We first will address whether the trial court correctly determined that the limitations period was tolled. *See Muzyka*, 293 S.W.3d at 385.

### Section 74.051 Notice

Section 74.051 provides, in pertinent part, as follows:

> (a) Any person or his authorized agent asserting a health care liability claim shall give written notice of such claim by certified mail, return receipt requested, to each physician or health care provider against whom such claim is being made at least 60 days before the filing of a suit in any court of this state based upon a health care liability claim. The notice must be accompanied by the authorization form for release of protected health information as required under Section 74.052.
>
> . . . .
>
> (c) Notice given as provided in this chapter shall toll the applicable statute of limitations to and including a period of 75 days following the giving of the notice, and this tolling shall apply to all parties and potential parties.

TEX. CIV. PRAC. & REM. CODE ANN. § 74.051(a), (c).

In the instant case, the summary judgment record contains an affidavit from Sana Abid, an attorney assigned to Franklin's case. In her affidavit, Abid states, in pertinent part, as follows:

> On April 20, 2016, I wrote the attached Ch. 74 letter to be sent out to Longview Regional Medical Center. My instruction to the staff was to fax and CMRRR the letter and health authorization. Attached is the letter that I wrote as Exhibit "A." In the file, attached as Exhibit "B" is our copy of the CMRRR. Attached as Exhibit "C" is a printout from Stamps.com, our postage account, indicating that one CMRRR postage was paid on April 20, 2016. Since this is the only CMRRR paid that day, I can reasonably conclude that the CMRRR was for the notice letter to be sent on April 20, 2016.

Exhibit "A" contains a notice letter apparently consistent with the requirements of Section 74.051. However, even though the letter states that a "health care authorization form for release of records" is enclosed, no such authorization form exists in the summary judgment record. Further, even though we indulge every reasonable inference from the evidence in Franklin's favor, we cannot conclude based solely on Abid's affidavit testimony that she instructed the office staff to send the letter and health authorization form that the staff complied with her instructions with regard to the authorization form where the summary judgment record contains no trace of that form. Thus, we

4

conclude that the summary judgment record does not support the trial court's finding that the two-year limitations period was tolled for seventy-five days pursuant to Section 74.051.

### *Hurricane Harvey Emergency Orders*

The summary judgment record also contains a copy of the Texas Supreme Court's emergency order pertaining to Hurricane Harvey, which states, in pertinent part, as follows:

> 1.  Hurricane Harvey struck the Texas coast on August 25, 2017. On August 23, 2017, Governor Abbott preemptively declared a state of disaster in 30 counties[, including Harris County]. On August 26, 2017, Governor Abbott declared a state of disaster in 20 additional counties.
>
> 2.  Court proceedings not only in those counties but throughout Texas may be affected by the disaster because of closures of courts and clerks' offices and difficulties with access, travel, and communication by lawyers, parties, and others.
>
> 3.  Pursuant to Section 22.0035(b)3 of the Texas Government Code, all courts in Texas should consider disaster-caused delays as good cause for modifying or suspending all deadlines and procedures—whether prescribed by statute, rule, or order—in any case, civil or criminal.
>
> 4.  This Order expires September 27, 2017 unless extended by the Courts.

*See* Emergency Order 9091 (footnotes omitted).[3]

Franklin argues that the trial court erred in further tolling the limitations period for her claims based on the Supreme Court's emergency orders. Instead, she argues that the trial court should have considered the order in conjunction with the question of whether she exercised due diligence in serving the Hospital. We agree. Franklin filed suit within the original two-year limitations period. As a result, no modification or suspension of the limitations deadline was necessary. Thus, we conclude that the limitations period for Franklin's healthcare liability claims ended on June 20, 2017, and we will consider the applicability of the supreme court's emergency orders in conjunction with our discussion of the issue of due diligence.

### Due Diligence

If a party files its petition within the limitations period, service outside the limitations period still may be valid if the plaintiff exercises diligence in procuring service on the defendant. *Ashley v. Hawkins*, 293 S.W.3d 175, 179 (Tex. 2009) (citing *Gant v. DeLeon*, 786 S.W.2d 259, 260 (Tex.1990)). When a defendant affirmatively has pleaded the defense of limitations and shown that service was not timely, the burden shifts to the plaintiff to prove diligence. *Proulx v. Wells*, 235

---

[3] *See also* Extension of Emergency Order Authorizing Modification and Suspension of Court Procedures in Proceedings Affected by Disaster, Misc. Docket No. 17-9125 *available at* http://www.txcourts.gov/media/1438986/179125.pdf (extending previous order until October 25, 2017).

S.W.3d 213, 216 (Tex. 2007) (citing *Murray v. San Jacinto Agency, Inc.*, 800 S.W.2d 826, 830 (Tex. 1990)). Diligence is determined by asking "whether the plaintiff acted as an ordinarily prudent person would have acted under the same or similar circumstances and was diligent up until the time the defendant was served." *Ashley*, 293 S.W.3d at 179. Although a fact question, a plaintiff's explanation may demonstrate a lack of diligence as a matter of law, "when one or more lapses between service efforts are unexplained or patently unreasonable." *Id.* The measure of due diligence begins from the time the suit is filed and an explanation is needed for every period of delay. *Sharp v. Kroger Tex. L.P.*, 500 S.W.3d 117, 120 (Tex. App.–Houston [14th Dist.] 2016, no pet.) (citing *Prolux*, 235 S.W.3d at 216).[4] Because the summary judgment record supports that the Hospital met its initial burden, the burden shifts to Franklin to present evidence regarding the efforts she made to serve the Hospital and to explain every lapse in effort or period of delay from the date she filed suit until the day she effected service. *See Ashley*, 293 S.W.3d at 179.

The summary judgment evidence on which Franklin chiefly relies consists of Gaytan's affidavit and the supreme court's emergency orders. The period of time between the date the lawsuit was filed on June 19, 2017, and when the Hospital was served on November 21, 2017, is one hundred fifty-five days, or approximately five months. Gaytan's affidavit establishes that she attempted to contact the process server eighteen times between June 19, 2017, and November 7, 2017. Her affidavit further sets forth that she monitored the Gregg County Clerk's website from September 21, 2017, following the process server's telling her he served the Hospital. It further establishes that she eventually called the clerk's office to get a copy of the previously issued citation on November 14, 2017, at which point she was instructed that citation would have to be reissued.

In *Roberts v. Padre Island Brewing Company*, *Inc.*, the appellant argued that she exercised due diligence by repeatedly attempting to contact the process server as well as the county clerk's office to inquire about the status of service. *See* 28 S.W.3d 618, 621 (Tex. App.–Corpus Christi 2000, pet. denied). But the court of appeals disagreed, concluding that her acts did not constitute due diligence because it is the responsibility of the person requesting service, and not the process server, to see that the service is properly accomplished. *Id.* The court emphasized that reliance on the process server does not constitute due diligence in attempting service of process. *Id.* (citing *Gonzales v. Phoenix Frozen Foods, Inc.*, 884 S.W.2d 587, 589–90 (Tex. App.–Corpus Christi

---

[4] *But see Sharp*, 500 S.W.3d at 121–22 (Christopher, J., concurring) (urging that delay that occurs before running of limitations be examined differently from delay that occurs after running of limitations).

1994, no writ)). The court noted that a reasonable person in the same or similar circumstance would have employed an alternate process server, a constable, or would have attempted service through other alternative court approved methods such as service through a court appointed third party. *See Roberts*, 28 S.W.3d at 621. Like the Hospital in this case, the appellee in *Roberts* also was an incorporated entity, whose agent for service of process was registered with the Secretary of State's office. *Id.* The court in *Roberts* observed that the appellant could have obtained the name of the appellee's registered agent by contacting the Secretary of State's office and effected service upon the appellee's registered agent through certified mail. *See id.* at 621–22. Ultimately, the court held that a lack of diligence existed as a matter of law because it was clear that the appellant did not exhaust all of the alternatives available to achieve proper service. *See id.* at 622.

Turning to the instant case, this court certainly is mindful of the devastating flooding caused to the greater Houston area as a result of Hurricane Harvey. However, the summary judgment record contains no evidence of any specific "disaster-caused delays" related to plaintiff's counsel's law office or to the process server other than Gayton's statement in her affidavit that the law office was closed during Hurricane Harvey.[5] The supreme court's emergency order does not set forth a blanket application of "good cause," for the effected counties, but rather states that courts should consider "disaster-caused delays as good cause." *See* Emergency Order 9091. Here, reviewing the record in a light most favorable to Franklin, the only determinable facts in evidence are that (1) her counsel's law office, which is located in Houston, was closed for an undisclosed period beginning around August 24, 2017, and (2) Gayton was able to resume her efforts to contact the process server on September 5, 2017. Thus, we conclude that Franklin has shown good cause for the delay during this twelve-day period.

Apart from this twelve-day period, Gaytan's affidavit establishes two relevant time periods––June 19, 2017, through August 24, 2017, and September 5, 2017, through November 14, 2017. During these periods of time, the record establishes that Gayton repeatedly called the process server, later monitored the Gregg County Clerk's website, and, ultimately, contacted the clerk's office. There is no evidence regarding what activities the process server undertook to attempt to serve the

---

[5] There also is a lone statement in one of Franklin's sur-replies to the Hospital's motion for summary judgment that "the events surrounding Hurricane Harvey were a significant factor contributing to the delays in serving citation in this case and justify good cause for the delay in effectuating service." However, Franklin made no citation to the summary judgment record in support of this broad statement, nor does the summary judgment record contain any evidence regarding how the events surrounding Hurricane Harvey specifically affected Franklin's counsel's law practice or how it impeded the process server's attempt to serve a hospital in northeast Texas.

Hospital, nor is there any evidence that Gayton or anyone else in Franklin's counsel's law office, during this time, sought to employ an alternate process server, a constable, or sought to attempt service through other alternative court approved methods such as service through a court appointed third party. Ultimately, it was the Gregg County Clerk's office who instructed Gayton that citation must be reissued, at which point she employed another process server, who served the Hospital's registered agent by certified mail within a week.

We stress that a plaintiff's explanation may demonstrate a lack of diligence as a matter of law, "when one or more lapses between service efforts are unexplained or patently unreasonable," and an explanation is needed for every period of delay. *See Ashley*, 293 S.W.3d at 179; *Sharp*, 500 S.W.3d at 120. Here, there are two periods of sixty-six days and seventy days respectively, wherein the summary judgment evidence demonstrates that a lack of diligence existed as a matter of law because it is apparent that Franklin did not exhaust all the alternatives available to achieve proper service. *See Roberts*, 28 S.W.3d at 622. Accordingly, we hold that Franklin's causes of action are time barred because she failed to continually exercise due diligence in attempting to serve the Hospital. Franklin's second and third issues are overruled.

### CONCESSION REGARDING FILING OF MOTION FOR SUMMARY JUDGMENT

In her first issue, Franklin argues that the trial court erred in granting the Hospital's motion for summary judgment because the Hospital's counsel "conceded" he would not have filed the motion had he known that Franklin provided the requisite presuit notice.

Franklin cites to no authority in support of her proposition that the Hospital's counsel should be bound by a statement regarding what procedural mechanisms he would not have employed had he been aware of something previously. Nonetheless, we cannot conclude that the Hospital's counsel's statement at the hearing on the Hospital's motion for summary judgment amounted to a concession as to the validity of the motion, pending Franklin's ability to demonstrate she sent a Section 74.051 notice letter.

Of course, had Franklin wished to enter into a binding agreement with the Hospital, wherein the Hospital would withdraw its motion for summary judgment if Franklin demonstrated she sent a compliant notice of claim, a Rule 11 agreement would be the appropriate mechanism to do so. *See* TEX. R. CIV. P. 11. Based on our review of the record, we conclude that the Hospital's counsel's statement on the record of what he would have done had the Hospital received notice does not

constitute such a binding agreement. *See id.*; *see also **Banderra County v. Hollingsworth***, 419 S.W.3d 639, 645 (Tex. App.–San Antonio 2013, no pet.) (Rule 11 agreements are contracts relating to litigation and require mutuality of assent regarding subject matter and essential terms of agreement). Nor in our review of the record have we found any writing that would serve to bind the Hospital to withdraw its motion as Franklin argues.

Lastly, the trial court did not err in rendering summary judgment in the face of the Hospital's counsel's statement. As set forth above, there is no Section 74.041 authorization form in the summary judgment record as is required to toll limitations. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.051(a). But even if the evidence supported that the authorization form was sent along with the letter, the issue of whether Franklin's notice of claim served to toll the limitations period does not, by itself, resolve the issue of whether Franklin exercised due diligence since in determining that issue, we still must consider the period from the time suit is filed until service is effected. *See **Sharp***, 500 S.W.3d at 120. Franklin's first issue is overruled.

## DISPOSITION

Having overruled Franklin's first, second, and third issues, we ***affirm*** the trial court's judgment.

JAMES T. WORTHEN
Chief Justice

Opinion delivered June 5, 2019.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(PUBLISH)

9



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

JUNE 5, 2019

NO. 12-18-00198-CV

**CHERIE FRANKLIN, INDIVIDUALLY AND AS
REPRESENTATIVE OF THE ESTATE OF EULA MAE FRANKLIN,**
Appellant
V.
**LONGVIEW MEDICAL CENTER, L.P., D/B/A
LONGVIEW REGIONAL MEDICAL CENTER,**
Appellee

---

Appeal from the County Court at Law No. 2

of Gregg County, Texas (Tr.Ct.No. 2017-1164-CCL2)

---

THIS CAUSE came to be heard on the oral arguments, appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that all costs of this appeal are hereby adjudged against the Appellant, **CHERIE FRANKLIN,** for which execution may issue, and that this decision be certified to the court below for observance.

James T. Worthen, Chief Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*